**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DWIGHT CALLIER,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **Case No. 3:25-CV-2331-B-BK** |
| | § | |
| **THE FINISH LINE INC.,** | § | |
| **DEFENDANT.** | § | |

**FINDINGS, CONCLUSION AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the district judge's order, this case was referred to the undersigned United States Magistrate Judge for pretrial management. Doc. 1; Doc. 16. Before the Court is *Defendant's Motion to Dismiss Plaintiff's Original Complaint*, Doc. 8. Upon review, the motion should be **DENIED**.

## I. BACKGROUND

This action arises out of unauthorized telephonic communications that Plaintiff Dwight Callier ("Plaintiff") alleges he received from Defendant, The Finish Line Inc. ("Defendant"). In August 2025, Plaintiff, proceeding *pro se*, filed this suit, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et. seq.*, and its implementing regulations, 47 C.F.R. § 64.1200. Doc. 3, *passim.* Plaintiff alleges that he registered his residential cellular telephone number ending in -0289 to the national Do-Not-Call Registry on October 6, 2021. Doc. 3 at 5. Plaintiff further alleges that, despite that registration, between December 2023 and June 2025, he received at least 97 text messages to his personal cell phone from Defendant. Doc. 3 at 5-6.

According to Plaintiff, each of these texts contained similarly formatted text followed by a link soliciting the recipient to buy Defendant's "shoe and shoe-like products." Doc. 3 at 6, 12. Plaintiff further alleges that he had no prior business relationship with Defendant, never provided Defendant with his phone number, or otherwise signed up to receive these texts. Doc. 3 at 5-6. Plaintiff contends that Defendant had no legitimate basis for possessing his cell phone number and therefore "randomly generated" the number before storing it in its automatic telephone dialing system ("ATDS"). Doc. 3 at 12. Plaintiff alleges that in doing so, Defendant invaded upon his rights to privacy and seclusion and interfered with his interests in his cellular phone. Doc. 3 at 12.

Based on these allegations, Plaintiff asserts two causes of action against Defendant under the TCPA. First, Plaintiff alleges that Defendant violated 47 U.S.C. §227(c) and 47 C.F.R. § 64.1200(c) by sending text messages to Plaintiff's telephone number after it had been registered on the national Do-Not-Call Registry. Doc. 3 at 13-14. Second, Plaintiff alleges that Defendant violated 47 U.S.C. §227(b) by using an ATDS to send text messages to Plaintiff without his prior express consent. Doc. 3 at 14-15.

Defendant now moves to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 8. Plaintiff has filed a response, Doc. 10, and Defendant has filed its reply, Doc. 11.

## II. Applicable Law

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows a

court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Unlike a "probability requirement," the plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint contains facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the non-moving party. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (internal citation and quotation marks omitted). Further, in reviewing a motion to dismiss under Rule 12(b)(6), the Court may only consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## III. ANALYSIS

### A. Do-Not-Call Claim

Defendant first challenges the sufficiency of Plaintiff's claim under the TCPA's do-not-call provision, 47 U.S.C. § 227(c), and related FCC regulation, 47 C.F.R. § 64.1200(c).

Section 227(c) of the TCPA grants the Federal Communications Commission ("FCC") authority to promulgate regulations "to protect residential telephone subscriber's privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. §§ 227(c)(1)-(2). In

relevant part, these regulations—codified at 47 C.F.R. § 64.1200—prohibit initiating a telephone solicitation to a "residential telephone subscriber" whose number is listed on the FCC's national Do-Not-Call Registry. 47 C.F.R. § 64.1200(c)(2). Section 227(c)(5) of the TCPA, in turn, creates a private right of action for any person "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of these regulations[.]" 47 U.S.C. § 227(c)(5). To state a claim under Section 227(c)(5), a plaintiff must therefore allege that he is a "residential telephone subscriber" whose number is registered on the Do-Not-Call Registry and that the defendant made more than one unsolicited "telephone call" to that number within a twelve-month period. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

Defendant contends that Plaintiff's claim under 47 U.S.C. § 227(c)(5) fails as a matter of law because the provision applies only to "telephone calls," not text messages, and because cell phones do not qualify as "residential telephones" under the relevant Subsections. Doc. 8 at 7. The Court addresses each of these arguments in turn.

**i. Section 227(c)(5) Applies to Text Messages.**

"The TCPA was passed in 1991, one year before the advent of the text message." *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-cv-343, 2016 WL 202930, at *3-6 (S.D. Tex. Jan. 26, 2026) (Crane, J.) (citing *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025)). However, the FCC established the Do-Not-Call Registry in 2003 and has since interpreted the TCPA to encompass text messages. *Alvarez,* 2016 WL 202930, at *3-6 (citing *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 (F.C.C. 2003) ("[The TCPA] encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls.")).

Defendant acknowledges the FCC's longstanding guidance interpreting "calls" to include text messages, but argues that, in light of the Supreme Court's decisions in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) and *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146 (2025), courts must independently interpret § 227(c)(5) using ordinary principles of statutory interpretation. Doc. 8 at 12. According to Defendant, applying these principles confirms that § 227(c) does not apply to text messages for two reasons. First, § 227(c)'s repeated references to "calls" cannot be interpreted to include text messages, which did not exist when Congress enacted the statute. Doc. 8 at 12. Second, although Congress subsequently amended other TCPA provisions to expressly encompass both calls and text messages, it left § 227(c)(5) unchanged. Doc. 8 at 12-13.

The Court of Appeals for the Fifth Circuit has not yet addressed whether Subsection 227(c)(5) applies to text messages post-*Loper* and *McLaughlin*. In the absence of binding authority, however, at least three district courts within this Circuit have held that text messages are actionable under Subsection 227(c)(5). *See Duron v. Kings Cap. Holding LLC*, No. 3:25-cv-149, 2026 WL 319779, at *5-6 (W.D. Tex. Jan 13, 2026) (Enriquez, J.), *rep. & rec. adopted*, 2026 WL 316037 (W.D. Tex. Feb. 5, 2026); *Alvarez*, 2026 WL 202930, at *3-6; *McGonigle v. Shopperschoice.com, L.L.C.*, No. 25-152, 2026 WL 413198, at *4-6 (M.D. La. Feb. 13, 2026) (Dick, C.J.). Two of these courts—*Alvarez* and *McGonigle*—reached this conclusion after conducting a thorough analysis of Section 227(c)'s text under the *McLaughlin* framework.[1] *See*

[1] *Duron*, by contrast, relied on existing precedent and the weight of authority in reaching its conclusion. *See* 2026 WL 319779, at *5 (collecting cases and holding that "interpreting § 227(c) to include text messages is consistent with numerous district court decisions."); *see also Hill v. Shoe Carnival, Inc.*, No. 6:25-cv-349, 2026 WL 217776, at *2 (E.D. Tex. Jan. 5, 2026) (Love, J.), *rep. & rec. adopted*, 2026 WL 216321 (E.D. Tex. Jan. 27, 2026) (acknowledging that the

*Alvarez*, 2016 WL 202930, at *3-6; *McGonigle*, 2026 WL 413198, at *4-6. Having independently reviewed the statutory text and the thorough analyses in *Alvarez* and *McGonigle*, the Court finds the decisions of its sister courts persuasive and adopts their reasoning here. The Court thus begins, as it must, with the statutory text.

Because neither Section 227(c) nor any other provision of the TCPA defines the term "telephone call," the Court must interpret those terms based on their "ordinary, contemporary, common meaning," at the time of the statute's enactment. *See Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018) ("[I]t's a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute.") (internal quotations and citation omitted).

As Defendant points out, text messaging did not exist when Congress enacted the TCPA in 1991. Doc. 8 at 6; *see also Alvarez*, 2026 WL 202930, at *4. Thus, "the verb 'to text'—now ubiquitous—had no such meaning" at the time. *Alvarez*, 2026 WL 202930, at *4. Defendant argues that this fact is enough to end the inquiry because "no ordinary person would think of a text message as a telephone call" and therefore, "it is inconceivable that Congress intended 'call' to encompass non-voice technology that had not yet been used[.]" Doc. 8 at 13, 15.

As the *Alvarez* court explained, however, the fact that the term "text" was later developed to distinguish text communications and voice communications does not mean that the concept was not encompassed by the meaning of "telephone call" in 1991. 2026 WL 202930, at *4. Although one certainly would not use the term "telephone call" to refer to a text message today, "a usage which seems obvious *now* is not always a reflection of the *original* meaning of the

weight of authority supports applying the TCPA to text messages but declining to determine the issue because the facts established that the defendant was entitled to an affirmative defense).

statute." *Id.* (emphasis in original). Indeed, "[w]hile every statute's *meaning* is fixed at the time of enactment, new *applications* may arise in light of changes in the world." *Wisconsin Cent. Ltd*, 585 U.S. at 284. Thus, "[i]n their full context, words mean what they conveyed to reasonable people to mean at the time they were written—with the understanding that general terms may embrace later technological innovations." *United States v. Palomares*, 52 F.4th 640, 648 (5th Cir. 2022) (Oldham, J., concurring) (quoting A. Scalia & B. Garner, *Reading Law* 16 (2012)). "For that reason, 'a 2012 statute referring to aircraft, if still in effect in 2112, would embrace whatever inventions the label fairly embraces, even inventions that could not have been dreamed of in 2012.'" *Id.* (quoting Scalia & Garner, *supra*, at 16). Similarly, "electronic transfers of paychecks," though uncommon in 1937, would nevertheless qualify as "money renumeration" under the statute because they fall within the original public meaning of "money" as a "medium of exchange." *Wisconsin Cent. Ltd*, 585 U.S. at 284.

The question, therefore, is not whether Congress contemplated text messages when it enacted the TCPA, but "whether the concept of a 'text message' is fairly embraced by the meaning of 'telephone call' in 1991." *Alvarez*, 2026 WL 202930, at *4; *see Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.") (quotation omitted).

Courts addressing this question have recognized that, at the time of the TCPA's enactment, the relevant dictionary definition of "call" was "to get or try to get into communication by telephone." *Alvarez*, 2026 WL 202930, at *4 (citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 197 (1990)); *McGonigle*, 2026 WL 413198, at *4 (same); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953-54 (9th Cir. 2009) (same) (citing WEBSTER'S THIRD

NEW INTERNATIONAL DICTIONARY 318 (2002)); *see also* OXFORD ENGLISH DICTIONARY (1989), https://www.oed.com/oedv2/00031625 [https://perma.cc/UHN8-XYNW] (last visited August 11, 2026) (defining "call" as "[a] summons or communication by telephone; a telephone conversation."). A text message, like a voice call, is another way "to get or try to get into communication by telephone." *Alvarez*, 2026 WL 202930, at *4. Therefore, the concept falls reasonably within the statute's original meaning. *Id.* at *5.

This conclusion is also supported by Section 227(c)'s statutory context. *King v. Burwell*, 576 U.S. 473, 486 (2015) (statutory terms must be interpreted "in their context and with a view to their place in the overall statutory scheme.") (quotation omitted). Although Subsection 227(c)(5) creates a private right of action for "telephone calls," that right extends to all calls made in "violation of the regulations *under this subsection*[.]" *Alvarez,* 2026 WL 202930, at *5 (emphasis in original) (citing 47 U.S.C. § 227(c)(5)). As Plaintiff points out, the surrounding provisions make clear that the subsection's broader purpose was to "protect residential telephone subscribers' privacy rights" against unwanted "telephone solicitations." Doc. 10 at 4 (citing 47 U.S.C. § 227(c)(1)). The TCPA defines "telephone solicitations" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 U.S.C. § 227(a)(4) (emphasis added). Notably, Congress added this definition after text messaging had become commonplace. *Alvarez*, 2026 WL 202930, at *5.

Defendant urges the Court to follow several out-of-circuit decisions in holding that Congress's use of the phrase "telephone call or message" in neighboring provisions, but not in § 227(c)(5), shows that Congress intended the provisions to "have different meanings." Doc. 11 at 4 (citing *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025); *El Sayed v.*

*Naturopathica Holistic Health, Inc.*, No. 8:25-cv-846, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (Merryday, J.)). As the court recognized in *Alvarez*, however, Section § 227(c)(5) is not a standalone provision; rather, it operates to enforce the entire subsection in which it sits. 2026 WL 202930, at *5. Thus, it is equally plausible that by including "telephone call or message" within the definition of "telephone solicitation," Congress intended to broaden 227(c)(5)'s cause of action to apply to all telephone solicitations covered by the subsection. *Alvarez*, 2026 WL 202930, at *5; *see also Pepper v. GVG Capital LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2024) ("[Defendant] also argues that text messages are not actionable under the TCPA . . .This argument fails in the face of [§ 227(c)'s] statutory language, which refers to "telephone call[s] or message[s]."). Indeed, the Court agrees that "'it strains belief to suggest that Congress silently determined that such oral messages were more invasive or objectionable than written ones.'" *Alvarez*, 2026 WL 202930, at *5 (quoting *Wilson v. MEDVIDI Inc.*, No. 5:25-cv-3996, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025) (Freeman, J.)).

Defendant's reliance on Congress's 2018 amendment to § 227(e), which added language distinguishing between voice and text communications, fails for similar reasons. Doc. 8 at 13. As explained above, if Congress already understood § 227(c)(5) as applying to text messages through the FCC's interpretation and the TCPA's definition of "telephone solicitation," it would have no need to amend the subsection to explicitly reference text messages.

Even so, the amended text of § 227(e) provides little support for Defendant's position. Subsection 227(e) is titled "Prohibition on provision of misleading or inaccurate *caller* identification information," and makes it unlawful, "in connection with any voice service or text messaging service, . . . to knowingly transmit misleading or inaccurate caller identification information." 47 U.S.C. § 227(e)(1) (emphasis added). Thus, although the amended provision

distinguishes between voice and text services, it simultaneously recognizes that both can transmit "*caller* identification information." *Id.* As one court has observed, this distinction therefore supports, rather than undermines, the conclusion that Congress understood "telephone call" to encompass both voice and text communications. *See Newell v. Children's Dental Health Assoc., LLC,* No. 25-5238, 2026 WL 927378, at *6 (E.D. Pa. Apr. 6, 2026) (Murphy, J.) (finding it "considerably more likely that the 2018 amendment reflects an understanding that the 'telephone call' language in subsections (c) and (c) includes texts").

Finally, the Court cannot ignore Defendant's apparent concession that § 227(b) applies to text messages despite using the same term—"telephone call"—that appears in § 227(c). *See* Doc. 8 at 19; Doc. 11 at 3; *see also* 47 U.S.C. § 227(b)(1)(B). As Defendant acknowledges, the Supreme Court and numerous courts of appeals, including the Fifth Circuit, have held that § 227(b) applies to text messages, or assumed so without deciding the issue.[2] Importantly, this interpretation has been ratified by Congress, thus rendering that construction "virtually conclusive." *Alvarez*, 2026 WL 202930, at *6 (citing *Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act*, PL 116-105, December 30, 2019, 133 Stat 3274 (recognizing that text messages are covered in § 227(b)); *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986)).

While this ratification is only conclusive as to § 227(b)'s construction, "it remains strongly persuasive as to a subsection of the same statute that uses identical language." *Alvarez,*

[2] *See Campbell-Ewald v. Gomez*, 577 U.S. 153 (2016) (assuming, without deciding, that a text message qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)); *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686 (5th Cir. 2021) ("Robocalls and robotexts are nuisances. Congress banned them in the [TCPA]."); *see also Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) (holding, under § 227(b), that receipt of one unwanted text message caused concrete injury sufficient for Article III standing).

2026 WL 202930, at *6. Indeed, holding that "'telephone calls' encompasses texts under some subsections, but not others, would yield potentially absurd inconsistencies." *Newell*, 2026 WL 927378, at *6. Unlike § 227(b), which focuses on the use of automated equipment by telemarketers, § 227(c) created a comprehensive regulatory framework to combat solicitations—automated or not—that Congress found constituted an "intrusive invasion of privacy." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (quoting Pub L. No. 102-243 § 2(5)).

Given the weight of authority holding that § 227(b) applies to text messages, it logically follows that the protections under § 227(c), which are not limited by type of technology, also apply to text messages. *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 640 (S.D. N.Y. 2025); *see also Hudson v. Palm Beach Tan, Inc.*, No. 1:23-cv-486, 2024 WL 4190513, at *7 n. 6 (M.D. N.C. Aug. 12, 2024) ("If a text message is a "call" under the statutory language in subsection (b)(1)(A)—which places restrictions on making "any call" using an automatic telephone dialing system to certain lines, without separately specifying that it includes text messages—then there is no reason to assume that a text message could not be a call under subsection (c)(5).").

In sum, the TCPA's text, statutory scheme, and relevant authorities support the conclusion that § 227(c)(5)'s private right of action applies to text messages. Accordingly, because text messages fall within § 227(c)'s prohibition on violative "telephone calls," Defendant's motion to dismiss on this basis should be **DENIED.**

**ii. Section 227(c) Applies to Cellular Telephones.**

Defendant further argues that Plaintiff's § 227(c) claim fails for the independent reason that Plaintiff's cellphone does not constitute a "residential telephone" for purposes of the provision. Doc. 8 at 16. Defendant's argument on this point mirrors its argument above.

Specifically, Defendant notes that various provisions of the TCPA reference cellular phones as distinct from residential telephones and, therefore, Congress's omission of the latter term in Subsection 227(c) was intentional. Doc. 8 at 18. The Court disagrees.

Although *Alvarez* did not squarely address whether cell phones are "residential phone[s]" within the meaning of § 227(c), *McGonigle* found that the issue was "implicit in the court's ruling, as text messages are received via cell phones." 2026 WL 413198, at *6 (citing *Alvarez*, 2026 WL 202930, at *5-6). Moreover, the overwhelming majority of courts that have considered the issue post-*Loper* have reached the same conclusion: "cellular telephone users can be considered 'residential telephone subscribers' under § 227(c)." *McGonigle*, 2026 WL 413198, at *6 (collecting cases) (quoting *Lirones v. Leaf Home Water Solutions*, LLC, No. 5:23-cv-2087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024) (Brennan, J.)); *see also Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 204 (S.D.N.Y July 3, 2024) (applying *Loper's* relevant interpretive tools and concluding that "users of cellphones are not categorically excluded from the definition of 'residential subscriber.'"); *Lyman v. QuinStreet, Inc.*, No. 230-cv-5056, 2024 WL 3406992, at *4 (C.D. Cal. July 12, 2024) (Pitts, J.) (concluding that "the statutory text . . . is best read to include at least some cellular phones subscribers within the category of 'residential telephone subscribers.'"); *Hudson*, 2024 WL 4190513, at *5 ("the FCC's relevant regulations—and the TCPA itself, . . . —make clear that [the regulations] apply to any "entity making telephone solicitations or telemarketing calls to wireless telephone numbers.").

The handful of cases cited by Defendant reaching a contrary conclusion are unpersuasive. Doc. 8 at 16-17. Most, if not all, of these cases were decided prior to *Loper*, and, in any event,

none are binding on this Court.[3] *See Callier v. Am. Auto Grp. LLC*, No. 3:25-cv-231, 2026 WL 1741206, at *6 (W.D. Tex. May 29, 2026) (Torres, J.), *rep. & rec. adopted*, 2026 WL 1738124 (W.D. Tex. June 16, 2026) ("Although courts have differed on whether a cellular telephone qualifies as a "residential telephone" under § 64.1200(c), there is no binding precedent foreclosing such claims."). In the absence of any binding authority, the Court adopts the well-reasoned decisions which have held that the privacy interests under Subsection 227(c) "do not depend upon whether the undesired telephone solicitations are received on a cellular phone rather than on a landline." *McGonigle*, 2026 WL 413198, at *6 (quoting *Lyman*, 2024 WL 3406992, at *4). Accordingly, Plaintiff can state a claim under Subsection 227(c)(5), so long as he adequately alleges that he is a "residential telephone subscriber." *Id.*

Defendant does not dispute that the Complaint's factual allegations satisfy this standard. *See* Doc. 8 at 18. Indeed, the Complaint clearly alleges that Plaintiff's telephone number, ending in -0289, is a residential number used for personal, family, and household use. Doc. 3 at 13. Plaintiff further alleges that he has not maintained a landline at his residence for at least 20 years and instead primarily relies on his cell phone to send and receive emails and text messages, communicate with friends and family, and perform other household tasks. Doc. 3 at 13. He also alleges that the cell phone is registered in his personal name and is paid for through his personal accounts. Doc. 3 at 13.

Taken together, these allegations plausibly establish that Plaintiff used his cell phone for residential purposes, such that he qualifies as a "residential subscriber" under Section 227(c).

---

[3] Notably, despite filing six "Notice(s) of Supplemental Authority" directing the Court to decisions issued after Defendant filed its motion to dismiss, Defendant has neither acknowledged the intra-circuit opinions in *Alvarez* and *McGongile* nor argued that either case was wrongly decided. *See* Doc. 17; Doc. 18; Doc. 19; Doc. 20; Doc. 21; Doc. 22.

*See, e.g.*, *McGonigle*, 2026 WL 413198, at *7 (finding similar allegations were sufficient to state a claim under Subsection 227(c)(5)); *Cacho*, 739 F. Supp. 3d at 208 (finding complaint amply alleged that the plaintiff was a residential subscriber where it alleged that the cell phone was a "personal phone" and enumerated the domestic tasks performed with the phone). Accordingly, because Plaintiff has stated a facially plausible claim under 227(c)(5), Defendant's motion should be **DENIED** in this respect.

**B. Automatic Telephone Dailing System Claim**

Defendant likewise moves to dismiss Plaintiff's Section 227(b) claim, arguing that Plaintiff has not alleged sufficient facts to establish that Defendant used an automatic telephone dialing system ("ATDS") to send the challenged messages. Doc. 8 at 19.

In relevant part, Section 227(b) makes it unlawful to use an ATDS to make any call or deliver any message to any telephone number assigned to a cellular phone without the prior express consent of the called party. 47 U.S.C. §§ 227(b)(1)(A)(iii)-(B). The parties do not dispute that a text message to a cellular phone qualifies as a "call" for purposes of Subsection 227(b). Thus, to state a claim under this section, Plaintiff need only allege that: (1) Defendant messaged a cellular telephone number; (2) using an ATDS; (3) without Plaintiff's prior express consent. *Adams v. Safe Home Sec. Inc.*, No. 3:18-cv-3098, 2019 WL 3428776, at *1 (N.D. Tex. July 30, 2019) (Lynn, C.J.).

To qualify as an ATDS for purposes of the TCPA, "a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 398 (2021) (citing 47 U.S.C. § 227(a)(1)). "Simply alleging the use of an ATDS, without more, is insufficient to sustain a TCPA claim." *Cunningham v. Nationwide Sec. Sols.*,

*Inc.*, No. 3:18-cv-337, 2017 WL 10486988, at *3 (N.D. Tex. Nov. 2, 2017) (Lynn, C.J.). But it is difficult for a plaintiff to "know[] the type of [dialing] system used without the benefit of discovery . . . ." *Id.* Mindful of this difficulty, courts have permitted plaintiffs to rely on indirect factual allegations to raise an inference that an ATDS was used. *Horton v. Tex. Fed'n for Children PAC, Inc.*, No. 3:22-cv-2736, 2023 WL 3136422, at *4 (N.D. Tex. Apr. 27, 2023) (Fitzwater, J.). In cases involving allegedly unlawful text messages, relevant factors have been found to include the message's content, including whether it was personalized or generic; the context in which it was received; the existence of similar messages; and whether the message was sent using an SMS short code.[4] *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-cv-1598, 2022 WL 562761, at *2 (N.D. Tex. Feb. 24, 2022) (Fitzwater, J.) (citations omitted).

Here, Plaintiff alleges that Defendant used an ATDS to "randomly generate[]" and store Plaintiff's telephone number and later used that same system to send 97 automated text messages to Plaintiff. Doc. 3 at 12, 15. His Complaint also details the content of the messages and the context in which they were received. Specifically, Plaintiff alleges that each message contained similarly formatted text followed by a clickable link to Defendant's website; that the messages all contained solicitations advertising Defendant's products or promotional sales and discounts; that each message was sent from the same five-digit SMS short code, "45819"; and that Plaintiff had no prior relationship with Defendant. Doc. 3 at 6-12. These allegations are further

[4] Text messages, also known as short message service ("SMS") messages, can be sent either from an "SMS long code" or an "SMS short code." *Tex. Fed. for Children PAC*, 2023 WL 3136422, at *4 n.5 (citation omitted). "SMS long codes are standard ten-digit telephone numbers including an area code," while SMS short codes are "four to six digit telephone number[s] used only for texting, and most frequently for commercial marketing purposes." *Id.*

supported by screenshots of five of the alleged messages and a table detailing the exact date on which each message was received. *See* Doc. 3 at 6-11.

In arguing that these allegations amount to nothing more than "vague generalizations," Defendant overlooks many of the detailed facts outlined above. Doc. 8 at 20. Indeed, the Complaint alleges many of the same facts and circumstances that courts have found sufficient to support a plausible inference that an ATDS was used. *See, e.g., Horton v. MultiPlan Inc.*, No. 3:23-cv-2098, 2024 WL 3380236, at *7 (N.D. Tex. June 7, 2024) (Rutherford, J.), *rep. & rec. adopted*, 2024 WL 3378719 (N.D. Tex. July 11, 2024) (allegations that the text messages were generic, did not address the plaintiff by name, and were received despite the absence of any prior relationship were sufficient to plausibly allege the use of an ATDS at the pleading stage); *Tex. Fed. for Children PAC*, 2023 WL 3136422, at *5 (holding that receipt of three generic text messages and the complete absence of any pre-existing relationship supported an inference that there was no way—aside from the use of an ATDS—for defendant to have obtained plaintiff's cell phone number). By contrast, the authorities on which Defendant relies are readily distinguishable.[5]

Construed in the light most favorable to Plaintiff given his *pro se* status, the Court finds the Complaint adequately alleges that an ATDS was used to send the text messages at issue.

---

[5] *See, e.g., Alpha Cash Buyers*, 2022 WL 562761, at *3 (holding allegations failed to support a reasonable inference of ATDS use where the messages were sent from an SMS long code, the plaintiff had previously spoken with the sender's agent multiple times, and two messages addressed him by name); *Horton v. Nat'L Republican Senatorial Comm.*, No. 3:22-cv-882, 2023 WL 372066, at *6 (N.D. Tex. Jan. 23, 2023) (Fish, J.) (allegations did not give rise to an inference of ATDS use where the complaint alleged receipt of only a single text message and provided only a threadbare description of the message's content and source).

Accordingly, Defendant's motion should also be **DENIED** with respect to Plaintiff's Subsection 227(b) claim.

## V. CONCLUSION

For the reasons outlined here, *Defendant's Motion to Dismiss Plaintiff's Original Complaint*, Doc. 8, should be **DENIED**.

**SO RECOMMENDED** on August 19, 2026.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).